IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCISCO MERCADO | § | |
| | § | |
| VS. | § | C.A. No.__________________ |
| | § | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY | § | |
| | § | |
| | § | |

**COMPLAINT**

FRANCISCO MERCARDO, Plaintiff, files this Complaint asserting causes of action and claims for relief in law and equity against The Lincoln National Life Insurance Company, Defendant.

**I.**
**PARTIES**

1. Plaintiff Francisco Mercado ("Mercado") is a resident citizen of Houston, Texas.
2. Defendant The Lincoln National Life Insurance Company ("Lincoln") is a domestic or foreign insurance company licensed to do business, and actively doing business, in Texas, and can be served with process by serving its Attorney for Service registered with the Texas Department of Insurance: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas, 78701-3218, or wherever it may be found.

**II.**
**JURISDICTION AND VENUE**

3. This civil action against Lincoln arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 *et seq* and seeks an award of long-term disability ("LTD") benefits, attorney's fees, and other relief arising from Lincoln.

4. This Court has jurisdiction in this action pursuant to 29 U.S.C. §1132 (e)(1).

5. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 29 U.S.C. §1132 (e)(2) because Defendant is actively engaged in the business of insurance and may be found in this district.

6. Pursuant to 29. U.S.C. §1132(h), this complaint is being served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue, N.W., Washington, D.C., 20210 and the Secretary of the Treasury at 111 Constitution Avenue, N.W., Washington, D.C., 20024 via certified mail, return receipt requested.

## III.
## STATEMENT OF FACTS

### A. Mr. Mercado's employment

7. Mercado is 62 years old. He is a double amputee, with ongoing complications with his stumps due to chronic diabetes. Due to Mercado's severe impairments, he is totally and permanently disabled under the terms and conditions of Lincoln's group disability policy, which it issued to his former employer, DolEx Dollar Express, Inc. ("DolEx").

8. In approximately 2013, Mercado applied for a job as a maintenance worker in the Houston and South Texas area with DolEx and was hired to perform maintenance work such as painting, repair work, climbing ladders, construction supervision, setting up DolEx displays and other tasks. He serviced the Greater South Texas area where DolEx operates retail store outlets that provide money transfer services, electronic bill payments for utilities and other consumer services.

9. Mr. Mercado's job duties included driving a DolEx vehicle for business purposes, travelling to DolEx's retail store locations in Houston, Victoria, San Antonio and other cities, which included overnight stays at hotels when he travelled from Houston.

10. Mercado's claims and causes of action in this lawsuit against Lincoln, arise from the group long-term disability ("LTD") policy that Lincoln issued to DolEx, under which Mercado was insured.

**B. <u>Mr. Mercado's Type 2 Diabetes, amputation of both legs and complications</u>**

11. At the time that he went to work at DolEx, Mercado had uncontrolled Type 2 Diabetes. He was under the care of physician(s) and took medication(s) to manage the disease. In approximately August and/or September of 2015, Mercado developed a blister on the pinky toe of his left foot. Mercado's left pinky toe became infected. Gangrene set in on his toe and ultimately spread to his left foot.

12. Mercado's physician(s) diagnosed him with osteomyelitis, a serious bone infection. Due to the progression of his disease(s), Mercado underwent a below-the-knee amputation (BKA) of his left foot on or about October 6, 2015.

13. As a result of the BKA of his left foot, Mercado was totally and permanently disabled from performing the essential duties of his own occupation as a maintenance worker at DolEx. He applied for and received short-term disability ("STD") benefits and, after exhausting those benefits, applied for and received LTD benefits from Lincoln.

14. Lincoln paid Mercado a monthly-LTD benefit in the approximate amount of $1,188.37 (One Thousand One Hundred Eighty-eight Dollars and Thirty-seven Cents) due to his total disability from being able to perform the essential duties of his own occupation.

15. In the aftermath of the BKA of his left leg, Mercado was fitted for a prosthesis for his left leg in approximately January of 2016. From that time forward, he continued to experience serious medical complications due to Type 2 Diabetes, and the effects of the amputation.

16. Mercado experienced severe pain in his hands and legs that resulted in an inability to hold objects without dropping them.
17. Sadly, Mercado's medical condition continued to deteriorate in 2016. In approximately December of 2016, he underwent a BKA of his right leg. In the aftermath of his second amputation, Mercado's pain and nerve damage to his hands was exacerbated.
18. Mercado experienced substantial physical limitations as he endeavored to adapt to the amputation of both of his legs. He experienced recurrent problems with wounds failing to heal in the areas around and/or near his stumps. He also experienced chronic pain in and around his stumps. Though fitted with prostheses, infections, pain and attendant complications interfered with Mercado's daily functioning. He required assistance with activities of daily living (ADLs), such as bathing and cleaning. He cannot bend over and has significant problems balancing. As a result of these problems, Mercado was dependent on a wheelchair to move about for much of his mobility.
19. Due to his dependence on a wheelchair, Mercado cannot lift even small amounts of weight because to do so is unworkable. Mercado has difficulty carrying objects while in his wheelchair. Carrying objects of even ten pounds results in Mercado losing balance while in his wheelchair and causes a risk of tipping over.
20. Throughout 2018, Mercado's left appendage shrunk, which required ongoing adjustments to padding for his left prosthesis. These difficulties impaired Mercado's mobility.
21. Mercado also developed a serious wound on his right stump that interfered with medical professionals successfully fitting him for a prosthesis for his right appendage in the Spring of 2018.

22. Mercado's physician(s) prescribed Tramadol and other medications that made him extremely drowsy throughout the day. He experienced significant problems with the sleeves on his prostheses because of excessive sweating.

23. Wound(s) on Mercado's right stump persisted and interfered with his ability to function. The effects of this wound, and his other conditions, resulted in Mercado experiencing chronic pain; nerve damage to his upper extremities which resulted in him frequently dropping objects due to limitations on his ability to grasp.

24. Due to the physical pain, double amputation, and physical deterioration, Mercado developed depression, which is commonly known to afflict double amputees.

25. Mercado has experienced frequent falling in his apartment. The falls have occurred while bathing and as he endeavors to move about his living space.

26. The serious problems to his right stump resulted in the remaining bone in his right appendage being too large. Due to this condition, on or about April 9, 2020, Mercado underwent another surgery conducted by Dr. Lubor J. Jarolimek to shorten his right appendage.

27. Due to the medical conditions described above, under the terms and conditions of Lincoln's policy, Mercado is totally and permanently disabled from working at any gainful occupation for which he is qualified based on his education, training and experience.

**C. <u>Mr. Mercado's education</u>**

28. Mr. Mercado graduated from high school in Bay City, Michigan in 1977.

29. After high school, he studied the humanities for approximately three years at Delta College in University Center, Michigan from approximately 1977 through 1980.

### D. Mr. Mercado's training

30. Other than his general education at Delta College approximately forty years ago, Mr. Mercado has not received any specialized training to qualify him to work in a highly-skilled job.

### E. Mr. Mercado's work experience

31. In approximately 1979, Mr. Mercado began working in customer services in department stores in Michigan. His job tasks consisted of physical labor, stocking, cleaning and taking manual inventory.

32. After working at department stores, Mr. Mercado worked providing cleaning services to department stress and other commercial facilities. This work included heavy labor and required him to lift and carry heavy objects that he is no longer capable of performing.

33. Mr. Mercado continued to work by performing cleaning services for stores and commercial facilities until approximately 1997. In 1997, he and his former wife started a business known as Sylvia's House Cleaning & Décor. The business provided cleaning and repair services to individual homeowners. Mr. Mercado performed the physical tasks of the business, including cleaning, painting, home repair, carpet cleaning, cleaning drapes, vacuuming and washing carpets, plumbing repair work and other cleaning services offered by that business. During this period of time, Mr. Mercado performed physical labor, and frequently had to bend, lift, stoop, carry and climb ladders to perform his job duties.

34. Mr. Mercado's family business ended due to divorce. As stated above, in approximately 2013, he applied for a job as a maintenance worker with DolEx and was hired to perform physical labor by DolEx.

### F. Mr. Mercado's claims for disability benefits from Lincoln

35. As set out above, Mr. Mercado continued to work for DolEx as a maintenance worker until becoming disabled due to gangrene in his left foot. He underwent a BKA of his left foot on or about October 6, 2015 and thereafter applied for disability benefits from Lincoln.

36. Mr. Mercado applied for STD benefits, which Lincoln paid.

37. After receiving STD benefits from Lincoln, Mr. Mercado applied for and received LTD benefits from Lincoln beginning in approximately March of 2016.

38. Mr. Mercado's monthly LTD benefit from Lincoln, after an offset for monthly Social Security Disability Income ("SSDI") benefits was approximately $1,188.37 (One Thousand One Hundred Eighty-eight Dollars and Thirty-seven Cents) per month for being totally disabled from being able to perform the essential duties of his own occupation as a maintenance worker for DolEx.

### G. Lincoln's premature termination of Mr. Mercado's LTD benefits

39. In correspondence dated November 30, 2017, Lincoln notified Mr. Mercado that it was preemptively terminating his monthly LTD benefits effective March 10, 2018. Lincoln arbitrarily and capriciously pre-terminated Mr. Mercado's LTD claim based on a claims evaluation conducted more than one hundred (100) days prior to the date that his right to receive continuing monthly LTD benefits because of his disability from being able to perform "each of the Main Duties of any occupation which his training, education or experience will reasonably allow."

40. As a matter of claims management convenience, Lincoln elected to pre-pay Mr. Mercado through March 10, 2018 without allowing for the possibility of consideration of his severe medical condition in December of 2017 and in January, February, and early March of 2018.

41. Mercado states, upon information and belief, that Lincoln, as a business practice, terminated his Own Occupation LTD benefits early so that it could cut off his benefits before the end of 2017.

42. Simply put, Lincoln did not care about the actual nature of Mr. Mercado's actual medical condition at or near the disability test change date of March 10, 2018.

43. As a matter of claims management convenience, Lincoln elected to close out Mr. Mercado's claim early so that the claim could be terminated before the end of 2017. Lincoln's premature decision to terminate Mr. Mercado's monthly LTD benefits 100 days before the date of the Test Change Date of March 10, 2018, was arbitrary and capricious.

**H. <u>Mr. Mercado's appeals Lincoln's premature termination of his LTD benefits</u>**

44. Mr. Mercado timely appealed Lincoln's premature termination of his monthly LTD benefits. Significantly, Lincoln calculated the 180-day period for him to appeal from November 30, 2017, the date of its preemptive termination of his monthly LTD benefits instead of the date of March 10, 2018, the date upon which the two-year period of total disability from his own occupation ended.

45. Through counsel, Mr. Mercado's first appeal provided Lincoln with documentation from his treating physicians that his double BKAs rendered him totally and permanently disabled from performing the essential tasks of any occupation for which he was qualified based on his education, training, and work experience.

46. As Mr. Mercado pointed out in his first appeal from Lincoln's premature termination of his LTD benefits, in arriving at its determination that he could perform gainful employment, Lincoln's vocational consultant Heili S. Randall made serious errors of fact

in her vocational analysis upon which Lincoln based its mistaken conclusion that he could perform specific gainful occupations.

47. Lincoln's vocational consultant erroneously stated that Mr. Mercado had the skills and abilities to climb and balance on poles and ladders. This was impossible because of Mr. Mercado's double BKAs, and ongoing open wounds and sores in Mr. Mercado's stumps.

48. Lincoln's vocational consultant arbitrarily failed to consider the impact that Mr. Mercado's paresthesia in of his hands and arms. Lincoln ignored medical evidence documented by Mr. Mercado's treating physician that he could never reliably grasp objects, and frequently dropped objects due to paresthesia and neuropathy in both hands.

49. Through counsel, Mr. Mercado pointed out in his first appeal that he experienced chronic pain, regular bleeding as a side effect from taking Coumadin due to his severely deteriorated circulatory system. Mr. Mercado provided Lincoln with medical records from the MLK Clinic in Houston documenting his severe impairments, which Lincoln and its agents, servants and/or employees failed to consider in arriving at its denial of his first appeal.

50. In evaluating his first appeal, Lincoln failed to consider a statement from Mr. Mercado's treating physician, Dr. Danielle H. Melton, opining in July of 2018 that due to diabetic peripheral neuropathy and paresthesia he would never be able to use his hands and fingers effectively to work at gainful employment.

51. In a letter dated October 3, 2018, Lincoln denied Mr. Mercado's first appeal.

## I. <u>Mr. Mercado's second appeal to Lincoln</u>

52. Through counsel, Mr. Mercado submitted a second appeal to Lincoln on or about March 25, 2019.

53. In his second appeal, Mr. Mercado provided Lincoln with evidence that demonstrated:

a) In addition to his double BKAs, he suffers from severe diabetic peripheral neuropathy;

b) An EMG study showed that he had carpal tunnel syndrome and median neuropathy causing permanent impairment of both hands rendering him unable to perform a sedentary job;

c) An inability to hold and grasp objects without dropping them;

d) He had renal vein thrombosis;

e) Suffered from a kidney infection(s) from an abscess or tumor;

f) He had urinary retention problems that would impair his ability to perform a sedentary job;

g) Had chronic wounds to both stumps of his amputated legs;

h) Experienced depression on a daily basis;

i) He could not perform normal activities of daily living (ADLs) by himself, including bathing, cleaning his home, etc.

54. In denying his first appeal, Lincoln employed Dr. Steven Winkel, D.O., who erroneously concluded that Mr. Mercado could perform a sedentary job.

55. The second appeal provided Lincoln with evidence that Dr. Winkel erred in concluding that Mr. Mercado could reliably use his hands to grasp and grip objects. Lincoln failed to consider or give weight to evidence of peripheral neuropathy in both hands that interfered with him using his fingers and hands to perform a sedentary job; erred in concluding that Mr. Mercado could lift or carry objects weighing up to ten pounds.

56. Neither Dr. Winkel nor any other physician affiliated with Lincoln ever examined Mr. Mercado.

57. Lincoln's correspondence denying his first appeal reflected that it did not fully comprehend Mr. Mercado's double BKAs and attendant chronic problems with wounds in his stumps. Lincoln's denial letter stated: "We understand that your client has been diagnosed with Acquired absence of unspecified foot."

### J. <u>Lincoln's denial of Mr. Mercado's second appeal ignored evidence that contradicted Dr. Winkel's opinions</u>

58. In correspondence dated June 10, 2019, Lincoln denied Mr. Mercado's second appeal.

59. Lincoln received but apparently misplaced evidence submitted with the second appeal. Accordingly, in evaluating his second appeal, Lincoln ignored medical evidence that expressly contradicted the opinion(s) of Dr. Steven Winkel, D.O., its medical consultant.

### K. <u>Lincoln's denial of Mr. Mercado's second appeal ignored vocational evidence that he is unable to work at any gainful occupation, including a sedentary job.</u>

60. With his second appeal, Mr. Mercado's counsel provided Lincoln with evidence from a vocational expert who opined that Mr. Mercado's physical impairments, as described above, prevents him from being able to work at any gainful occupation, including a sedentary job.

61. Lincoln's letter dated June 10, 2019, denying Mr. Mercado's second appeal simply ignored evidence from Mr. Mercado's vocational expert, failed to acknowledge its submission and wholly failed to address it.

62. Lincoln's denial of the second appeal ignored credible medical evidence that Mr. Mercado had serious, chronic wounds in the stumps of both amputated legs; ignored that he could not reliably ambulate and cannot lift or carry objects due to impairment of his hands.

Lincoln wholly failed to address evidence submitted to it that Mr. Mercado frequently dropped objects due to paresthesia in both hands.

63. Lincoln's vocational assessment of Mr. Mercado was cursory and failed to include his documented physical and medical limitations.

64. Lincoln's vocational assessment of Mr. Mercado was unreliable because it improperly enhanced his transferrable skills. Lincoln's vocational evaluation credited Mr. Mercado with computer skills for which he had no education, training or experience.

65. Mr. Mercado's relevant education, training and experience is substantially limited to performing physical labor in cleaning homes, painting, making home repairs, and his employment as a maintenance worker for DolEx.

66. Mr. Mercado is without education, training or experience utilizing computer skills that are essential to the occupations Lincoln asserted that he could perform as a surveillance-system monitor, repair-order clerk or maintenance dispatcher.

67. Lincoln failed to perform a meaningful evaluation of the evidence and arguments that Mr. Mercado submitted with his second appeal.

### L. <u>Lincoln wrongly refused to consider Mr. Mercado's additional evidence</u>

68. On or about August 10, 2020, Mr. Mercado submitted additional evidence in support of his claim. He provided Lincoln with a detailed declaration, additional medical records, a Functional Capacity Evaluation (FCE), a medical evaluation of his medical history by Dr. Stephanie Cohen, D.C. Mr. Mercado also provided Lincoln with medical records from Dr. Lubor J. Jarolimek that documented a third surgery to remedy shrinkage of his stump(s) and bone structure that exceeded the remaining physical area of his right stump.

69. Throughout the claims process, and with evidence submitted to Lincoln in August of 2020, Mr. Mercado documented that he experienced severe pain due to repeated infections in his stumps and wounds that would not heal. In evaluating his LTD claim and appeal, Lincoln failed to consider the side effects of Mr. Mercado's prescribed pain medications.

70. Pursuant to Fifth Circuit case authority, Lincoln was obligated to review the additional evidence that Mr. Mercado submitted with his second appeal and on or about August 10, 2020. ("The administrative record consists of relevant information made available to the administrator [Lincoln] prior to the…filing of a lawsuit in a manner that gives the administrator a fair opportunity to consider it. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the Fifth Circuit. In *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 245 (5th Cir. 2018) the Fifth Circuit expressly upheld Lincoln's obligation to review evidence and medical records submitted by Mr. Mercado and its duty to re-evaluate his claim.

71. In a letter dated September 17, 2020, Sandra Nolan of Lincoln advised Mr. Mercado's counsel that it would not review the information submitted on his behalf on or about August 10, 2020. Lincoln had adequate time to review the evidence submitted. As with evidence submitted with Mr. Mercado's second appeal, Lincoln arbitrarily chose not to consider evidence Mr. Mercado submitted documenting his total disability from working at gainful employment due to his comorbid medical conditions.

72. Mr. Mercado asks this Court to review all of the evidence he submitted in support of his claim and appeal. He also requests that all of the evidence he submitted, including evidence submitted with his correspondence of August 10, 2020 be made a part of the Administrative Record for the Court's review.

73. Having exhausted his administrative remedies, Francisco Mercado brings this lawsuit to recover LTD benefits promised under Lincoln's DolEx group policy. He also seeks a finding that based on the evidence in the Administrative Record, he is totally and permanently disabled from working at any gainful occupation, as that term is defined in the policy.

## IV.
## CAUSES OF ACTION & CLAIMS FOR RELIEF

74. Mr. Mercado's LTD claim and his right to benefits is governed by ERISA. 29 U.S.C. §1001, *et. seq.* DolEx is the plan sponsor. Lincoln is the insurer, Claims Administrator and a named fiduciary under the DolEx Long Term Disability Plan.

75. As a Plan fiduciary, Lincoln was obligated to process claims for the benefit of the Plan and its beneficiaries, and to deliver the benefits promised in the Plan, as set out in the group LTD policy that Lincoln issued to DolEx. Lincoln is obligated to conduct its investigation of the claim in a fair, objective and evenhanded manner.

76. Lincoln's adjustment or putative adjudication of the Mercado claim was biased and outcome based. This was in part reflected by the denial of the Mercado claim, although Lincoln was presented with substantial evidence of his disability. Lincoln's unreasonableness and bias was also reflected in its reliance on reviewers who lacked the education, training and experience to objectively or competently review the Mercado claim.

77. Lincoln's denial of Mr. Mercado's appeals was made without any substantial supporting evidence that he could work at gainful employment.

78. Lincoln's denial letter of Mr. Mercado's second appeal was arbitrary and/or capricious because Lincoln failed to address the evidence submitted with Mr. Mercado's second appeal, as set out above.

79. On or about November 30, 2017, Lincoln prematurely decided that Mr. Mercado would not meet its definition of Total Disability from any occupation when the date for such a determination was on or about March 10, 2018. Lincoln simply did not care what Mr. Mercado's medical condition, skills and abilities were on the date of the actual test change on March 10, 2018, and ignored the severe medical and severe limitations he experienced at the very time it prematurely determined he was no longer totally disabled.

80. Lincoln's denials were made without substantial supporting evidence. Its decision to terminate the Mercado claim prematurely was based upon rank speculation and guesswork. Lincoln's decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

81. At all material times, Lincoln was acting in an inherently conflicted capacity as both the Insurer and Claims Administrator of the Mercado claim.

82. Defendant's termination of the Mercado claim, denials of his first and second appeal, and failure to consider evidence submitted on or about August 10, 2020 were in violation of 29 U.S.C. §1132(a)(1), entitling Mercado to the policy benefits to which he is entitled, along with pre-judgment interest on the amounts due and unpaid, reasonable and necessary attorney's fees for the prosecution of this lawsuit, for which Mr. Mercado brings this lawsuit against Lincoln.

## V.
## STANDARD OF REVIEW

83. The default standard of review for denial of a benefit claim is *de novo.* Where the plan or policy confers discretion on the Claims Administrator, here Lincoln, an abuse of discretion standard may apply.

84. The plan or policy may contain a discretionary clause or language Defendants may construe as affording them discretion to determine eligibility for benefits, to interpret terms of the policy, and determine facts. Defendants' termination and/or denials of Mr. Mercado's appeals, and refusal to review evidence submitted with his second appeal and on or about August 10, 2020 under this standard of review were individually, or taken together in any combination, an abuse of discretion and arbitrary and capricious.

85. Alternatively, the standard of review of this claim should be *de novo,* affording Lincoln no discretion in its interpretation of the terms of the policy and its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

86. The plan or policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies. 28 TEX. ADMIN. CODE §3.1202. Therefore, the Mercado claim, appeals and submission of additional evidence to Lincoln, and Lincoln's claims handling conduct, both in their interpretation of the terms of the policy and/or plan, and determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

87. Mr. Mercado requests, in addition to the amount of monthly LTD benefits withheld, prejudgment interest on any award he receives from the Court. He is entitled to

prejudgment interest as additional compensation pursuant to TEX. INS. CODE §1103.104, or as a matter of equity.

88. Lincoln's group policy does not provide for a rate of interest on monthly LTD benefits that are wrongfully withheld. Accordingly, pursuant to TEX. INS. CODE §1103.104(c), Mr. Mercado requests an accounting to determine the amount of money that should have rightfully been paid to him and to determine the appropriate amount of prejudgment interest due him on monthly LTD benefits that Lincoln wrongfully withheld.

## VII.
## CLAIM FOR ATTORNEY'S FEES & COSTS

89. Mr. Mercado seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, and costs of court, pursuant to 29. U.S.C. §1132(g).

## VIII.
## PRAYER

90. Plaintiff Francisco Mercado respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor against Defendant The Lincoln National Life Insurance Company and grant judgment against it as follows:

   A. Pay to Mr. Mercado all benefits due and owing in accordance with the terms of Lincoln Group Disability Policy under which he is insured, as well as all prejudgment interest due and owing under law and at equity;

   B. Pay all reasonable attorneys' fees incurred and to be incurred by Mr. Mercado in obtaining the relief sought by this lawsuit, along with all costs associated with the prosecution of this action; and

C. Grant Mr. Mercado any and all other relief to which he may be entitled at law or in equity.

Respectfully submitted,

Berg Plummer Johnson & Raval, LLP

By: s/ James C. Plummer

Digitally signed by James C. Plummer
DN: cn=James C. Plummer, o=Berg Plummer, ou=Partner, email=jplummer@bergplummer.com, c=US
Date: 2021.03.05 14:18:09 -06'00'

James C. Plummer
TBA #16075700
S.D. No. 3692
3700 Buffalo Speedway,
Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
jplummer@bergplummer.com

ATTORNEYS FOR PLAINTIFF